My name is George Lucas. I'm an attorney with the Federal Public Defender's Office for the Northern District of Mississippi. I'm appearing for Mr. Nickdaniel Clay today. Mr. Clay brings two issues before the court. The first issue is the failure of the district court to appreciate its discretion to give him a downward variant from the career offender guideline at the time of his sentence. The second issue is the failure of the district court to give him an opportunity to allocute at the time of his sentencing and to speak to the court specifically about why the court should vary downward from the sentence set out by the career offender guideline. Mr. Clay was initially charged with possession with intent to distribute approximately 52.5 grams of powder cocaine in the Northern District of Mississippi. He entered a plea and a pre-sentence report was prepared. Based on the amount of drugs and his criminal history, Mr. Clay at that time was looking at a sentencing guideline range of approximately 30 to 37 months. However, because linguistically Mr. Clay fell under the career offender guideline, that sentence was increased to 151 to 188 months. You handled sentencing, right? I'm sorry? You were his attorney at sentencing? I was, yes, Your Honor. You had that wonderful line about career offenders for the worst of the bad, not someone with one grain of sand? That is correct, Your Honor. But it didn't get you a downward departure? It did not, Your Honor, because I don't believe the judge recognized her discretion to give a downward departure. Well, it looked to me from reading the transcript that you and Mr. McGee have been in court probably quite a bit. And this was not – there wasn't much antagonism. It seemed to me that at a certain point, Mr. McGee was saying, yeah, technically he is a career offender, but you're making good arguments. We appreciate that. And to my reading of it, the judge was originally unclear. She said, I just need guidance, and if there were guidance, I would have a different outcome. That looks compelling for your case. But then Mr. McGee, sort of apparently appreciating that, says, Judge, you do have guidance. And then she backs up a little and says, well, I guess I do have the guidance, but I'm not exercising it. I think you're absolutely correct, except from the standpoint that I believe she thought under the general stricture of Booker that a court can depart or vary from a guideline at any point. Right. But she did not feel comfortable under the career offender guideline because there was no direct Fifth Circuit authority giving her the guidance that she could do that. And I think that's desperately what she's asking for. She's asking for this court to say that because of the career offender guidelines is sometimes extremely unfair, that a district judge who disagrees with the application of the career offender guideline in a particular case can look at the 3553 factors and vary from that guideline. And I think the government basically agrees that you can vary under Booker from any guideline, including the career offender guidelines. It's an issue of what Judge Higginson just said about what the district court actually thought in this case, which is somewhat inconsistent. But you argue it in your brief as whether the district court can make a policy disagreement with the career offender. And you talk about Kimbrough, which allowed policy disagreements with the crack guidelines. But it seems to me you might be making your argument a little too difficult because I don't think you even have to have a policy disagreement. I mean, you can think generally these career offender provisions are a good thing. I mean, you know, criminal history is a fundamental basic principle of sentencing to look at that and give it consideration. But to say that as you just, I think, articulated, in this particular case it results in too high a sentence, even if as a policy matter it generally makes sense. Is it a policy disagreement or just an application to this particular defendant? I think it's more of an application to this particular defendant. But I wanted to make sure that we gave a basis for if the court believed that the application to this particular defendant was improper, was excessive, that it could come down to a more reasonable sentence. If she knew she had the discretion and didn't, we wouldn't even have jurisdiction to review that choice, right? That's correct, Your Honor. If she knew she had discretion and didn't exercise that discretion, it was a within guidelines sentence and, therefore, it cannot be reviewed. It would just be whether it's unreasonable. That's right. Except, of course, that we also have the argument about allocution that we believe will demand it. If this gentleman had such a compelling departure or variance story, I'm curious, you just missed it? Or why wouldn't you then have objected and said, Judge, you've got to listen to him? Right? Because we're reviewing the allocution for . . . If we're talking about . . . Well, the two connect, right? Because you're saying if she had just known the full story, grandfather and small amounts . . . I think if the . . . I don't know. At the time, it would have been proper for him to allocute. The judge had made her decision that she was not going to vary downward, seemingly. But if he had, speaking for himself, been able to address the court and I believe the Supreme Court once said that the most halting of defendants is sometimes much better than the eloquence of an attorney, the judge might have made the decision that I don't feel comfortable. I don't have guidance from the Fifth Circuit stating that I can do a downward variance in this case. But I'm going to do it anyway and let the government be the one that appeals. So there is at least that possibility that had the defendant been given his right to allocation under Rule 32, that the court might have turned around on that issue. Now, if we remand, send it back, she's got discretion to go high, right? She gave your client the bottom of the guidelines. Absolutely. So if she finds, again, technical career offender, he talks, he can push himself up. That is within the realm of possibility. However, if this court gives her guidance that she can go down from the career offender guideline, she mentioned at least three times in the transcript that she stated, I'm a bit troubled by the great difference in the guidelines in your case as to applying the career offender guidelines versus not applying it. If I had Fifth Circuit guidance here that they had looked at it, I know what I would do. Without the Fifth Circuit having recognized the court's authority to vary from the guidelines in these circumstances, where any guideline other than the guidelines affecting drug cases, but particularly in a situation where it's a career offender case, had I that Fifth Circuit authority, I think the outcome would be different today.  This is a district court begging the Court of Appeals to tell her that she does have the authority to depart from the career offender guideline. Other circuits have . . . But Booker itself tells her. I mean, that's at least your argument. Booker just generally says you can . . . Certainly. With analysis of the statutory sentencing factors, you can't just do it willy-nilly, but . . . That's right. But it doesn't apply to some guideline provisions and not to others, right? It's just an across-the-board . . . That's correct. I think Booker gets her absolute authority for a downward adjustment in the sentence, or an upward adjustment in the sentence. Certainly, when Kimbrough came out, it stated that in crack powder cases, a judge could depart based on the disparity. What is just . . . what's the proper terminology post-Booker? There are . . . To cost him a note, is it vary, adjust, depart, or is departure not even an appropriate legal term? No. A departure is within the guidelines. There are certain things that say that a judge can go below a properly . . . Okay. So that's still called a departure. That's correct. A variance is outside the guidelines. What you were asking for here was a variance. That's correct. What we suggested is that . . . there's no question that he qualified as a queer offender. He had a previous conviction for a crime of violence, as well as a previous conviction for a drug trafficking offense. Although, as I pointed out, the weight of the drugs involved in that offense was that of a drop of water or a large grain of sand. One-tenth of a grain. But it qualified. So we were asking the court to vary downward, give us a downward variance, and we suggested that a proper sentence would be the offense level, based on the amount of drugs involved, which was an offense level of 16, with acceptance and responsibility would have been a 13, and move him up from a criminal history Category 5, which is where he was, to a criminal history Category 6, which would have given him a sentencing guideline range of 33 to 41 months instead of the 30 to 37 that would have been his guideline range based just on the amount of drugs and his criminal history. If you had objected to the failure to allocute and the judge had just said, you know, I'm done, I made my mind up, is that subject to harmless error review? Do you know from looking at the case law? I guess what I'm wondering is, even outside the Fifth Circuit, do you know of any circuit law that will say failure to allocute is harmless? I do not, Your Honor, and I can't imagine a set of circumstances that if you brought it to the judge's attention that she had failed. Okay, so then here we're looking at plain error. Here we're looking at plain error. Okay, but we have prejudices as third prong, so the issue would be is there a fourth prong case under Rule 52 that would allow a judge to not allocute? Under Rule 32? No, I'm thinking of the plain error standard. Isn't that 52? There is a case. It's case U.S. v. Reno, which is a Fifth Circuit case. There was an en banc reconsideration, but in that case it was a different set of circumstances. You had a defendant who was before the court for the third time on a supervised release revocation. The first time he had been sentenced, the second time he had come before the court, the judge had said, Mr. Reno, you may go to jail for six months right now, or I will extend your supervised release for 12 months, but if you violate during those 12 months, I'm going to give you a 12-month sentence of incarceration. Several months later, he came back before the court, having violated the supervised release again, and the court said, I told you the last time you were here, if you violated, you're going back to jail for 12 months, and he appealed based on the failure to give allocution under Rule 32, and the en banc court said in that particular set of circumstances, the failure to give allocution was not prejudicial, and therefore, we're not going to reverse. In other cases, Montero, Rodriguez, Lister, Myers, Inchagolin, Barracuda, and Raymond, when the court was uniform, when it was initial sentencing, the first time they had come before the court for sentencing, and the district court failed to give the right of allocation, this court has reversed and rendered out. Had he been speaking during the sentencing hearing? He was only addressed by the court three times, and those were just, have you had a chance, do you know why you're here, have you had a chance to review your pre-sentence report, and do you understand your right to appeal? Those were the only times the court directly addressed Mr. ______. It does seem, just coming from the district court, it seems kind of hard to believe we've got experienced counsel on both sides, we've got an experienced judge, that allocution is the central procedural right at a sentencing hearing. That's the main event, other than the judge announcing the sentence. But if we agree with you that there's two errors in this case, both the sentencing discretion issue and the allocation issue, which one should we consider first, or do you think that makes any difference? Well, I think the failure to grant the right of allocation demands that the judge have the case be remanded to the district court judge, and then further, I think the court could point out that under the Booker, Kimbrough, Rita, and Spears line of cases, that the court has the authority to vary downward from any guideline, including the career offender guideline. There are cases in the Fifth Circuit that have been reviewed by this court where there was a downward variance from the career offender guideline. None specifically addressed that issue, but there were other issues that were addressed by this court, but in the opinions, it was mentioned that the court, the district court, had departed downward from the guidelines, or from the career offender guideline. So what we're asking for is not for this court to change the law, but just to clarify it so that the district court understands that she is able, that she is within her authority to depart or to vary from the career offender guideline. Right. I mean, it seems like that's the issue on which there might be uncertainty or a misunderstanding out there in the district courts. In the allocation issue, the reason it's plain and obvious error is because everyone agrees you have the right to allocate. All I can say about that is we were all so focused on one issue, and as a district court judge, you know, we were so focused on one issue. That's what I was arguing about. That's what Mr. McGee was arguing about, and that's what the judge was focused on, and we just . . . it's hard to imagine a court making a mistake, but I think we did on that day. In effort to your question, I can't imagine any time that you would ever bring to a court's attention the fact that they had failed to grant an allocation that they wouldn't then grant it. I've had judges bring people back from the cell and say, I just was informed I failed to let you allocate, so let us do it. Thank you very much. I have five minutes for rebuttal if you have anything further. Thank you. Thank you. May it please the Court. My name is Clyde McGee. I'm Assistant United States Attorney, and I was the United States Attorney on this case. I believe it is interesting what Judge Costa pointed out about taking these one at a time or together. I think they're both connected. I guess the government would submit that if we look at the authority, whether it was a procedural error on the departure, or I guess rather the variance, then I think it could have an effect on the right to allocation. And what I'm getting at is if the court knew that it had authority and ended up convincing themselves that they had authority but just decided not to, which I understand I have problems, which I'll point out later in the transcript with that. whether it seriously affects the fairness, integrity, or public reputation. This Court has previously looked at, in the case of Neal and Zelata, this Court has looked at the Court's focus. Are those published decisions? They are not. Neal and Zelata are not. They are unpublished as well as Coleman. So do you have any published authority overlooking a defendant's failure to allocate as either harmless or even fourth-pronged plain error? Any published circuit authority? The published circuit authority that supports my position, I would say no, Your Honor. However, if you . . . It's just, you know, I . . . certainly not what you're doing here. In fact, you know, I think both below and on appeal, you've been very, very even-handed. And by that I mean you saw the sort of . . . the slight train wreck occurring with her saying it would affect outcome if I could. And then you twice say, Judge, you do. You do have authority. So it gets a little confusing because if you're good lawyering, it's wonderful when the government sees an error and is trying to stop it. But then put that aside. I mean, again, on your brief dust, you say it is a quagmire. And you're very open about that. But when you combine the fact she gave him the low end of a guideline range, and he didn't get to allocute, and there's this confusion, it's hard to see that we would want to invoke the fourth prong of Rule 52 and just say, you know, there's just no possibility of an injustice here. I agree, Your Honor. It's a very difficult situation. However, I think my best argument is that the court was looking at the disparity between . . . I believe it was actually 33 to 41 versus 151 to 188. The court was troubled by that large disparity. And while I do believe she did an individualized assessment of this defendant, it hasn't been like previous cases where the court was concerned about, you know, drug use during supervisor release or something of that nature. This was a . . . she was concerned legally. And so, again, my best argument is that Mr. Lucas's brief does not point out anything that would change her mind legally speaking. It seems like the importance of allocution is, and I've seen this both as a prosecutor and as a district judge at sentencing, is that you can think you know exactly what you think . . . you know, you're coming in with what the sentence should be, and the allocution often, you know, you hear things you never expect to hear, you know, that help or hurt the defendant. So it's just tough to say it can never affect the outcome or that depriving the defendant of that opportunity doesn't cause one to question the integrity of the proceeding, which is the fourth standard. Carry on. Let me ask on the discretion issue. I mean, as we've all said, it is a bit of a muddled record. You tried your best to emphasize that there is discretion under Booker. And arguably, it's cleaned that up for the district court. But it seems like at a minimum, even if she thought she had general discretion under Booker, there are these statements that she thought she needed a Fifth Circuit case on point on this guideline. Isn't that also error . . . even if she did make these pronouncements about having general discretion, isn't it error to think you need a specific case that pertains to a particular guideline when Booker says you have across-the-board discretion? I haven't thought of it like that, but I would probably consider that error. I think, as Mr. Lucas pointed out, one of the uphill battles for the government is the fact that the court stated that the outcome would be different. Now, however, if you look at the last thing she said, she discusses the 3553 factors. And then right after she mentions the 3553 factors, she goes in and says, I have no doubt that he is a career offender under the guidelines. And the court stated that the equitable issue in this case is one more troubling for the court, that just by that calculation is a substantial difference. So then the court goes on to say the question then is more for the court as to whether or not the court should grant a variance on the facts as they are applied to Mr. Clay. And I've explained the reasons why I don't think it's applicable in this case or, and this is important, why the court elects not to vary, I should say. So, again, it appears the court knew that it had discretion to do it, but in the court's own words stated that, you know, the question is whether the court should grant a variance on the facts as they are applied to Mr. Clay. So, again, it's a little bit of difficulty, but I think that's my best argument. I agree. If you don't have anything else, we've got the briefs. We appreciate your arguments. Thank you. Thank you for your time. Very briefly, Your Honor, if you have any further questions for me, I think you understand the issue. I think it's very clear that Mr. McGee has made the best of a bad, done his best to make a silk purse out of a sow's ear, but I think the court clearly wanted guidance, wanted explicit guidance, that it had authority to depart downward or to vary downward from the career offender guideline and did not feel that it had that guidance from this court. And Mr. Clay received an extremely long sentence as a result of that. I think justice demands that this court reverse and remain in the release of the sentence. If you catch a sort of glaring error that neither side caught at sentencing, but you've already commenced your appeal, you've filed your notice to appeal, you're writing it, and you both suddenly realize, okay, I didn't allocute, no authority to go back to the district court directly, right? You've got to come to us. None that I know of, Your Honor. I believe that that is an issue that has to come to the circuit court of appeals. Okay. Thank you very much. Thank you very much.